No. 18,062.

THE CENTRAL BANK AND TRUST COMPANY *v.*
JACK ROBINSON, ET AL.
(326 P. [2d] 82)

Decided May 26, 1958. Rehearing denied June 16, 1958.

410

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for plaintiff in error.

Messrs. CREAMER & CREAMER, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

IN the trial court plaintiff in error was one of three defendants, and defendants in error were plaintiffs. In this opinion we refer to the defendants in error as plaintiffs, and to the plaintiff in error as the Bank, and to Neilsen and Newton, defendants below, by name.

On February 7, 1955, plaintiffs commenced this action, naming as defendants Silas M. Newton, Charles C. Neilsen and Central Bank and Trust Company. By their complaint the plaintiffs seek to recover from the defend-

ants, pursuant to provisions of The Federal Securities Act of 1933 and The Securities Law of Colorado, the respective amounts paid by them to Neilsen for participation certificates, each representing a 1/48 interest in a 3% overriding mineral royalty controlled by Neilsen and conveyed in trust to the Bank; said certificates having been prepared, executed and sent through the United States mails by the Bank to the purchasers. No service has been had on Newton. Neilsen filed his answer and in substance confessed judgment and judgment was entered in favor of plaintiffs and against Neilsen. No review of this judgment is sought.

On February 9, 1955, the plaintiffs filed and caused to be served on the Bank their REQUESTS FOR ADMISSIONS OF FACTS AND OF GENUINENESS OF DOCUMENTS, calling for sworn statements of the truth of fifty-nine alleged relevant matters of fact set forth in the requests, all as provided in Rule 36, R.C.P. Colorado.

On February 17, 1955, the Bank filed (1) its motion to dismiss the complaint, as not stating a claim against the Bank; (2) its motion to strike portions of the complaint as being immaterial and redundant. Ruling on these motions was not had until the entry of summary judgment as hereinafter set forth.

On February 21, 1955, the Bank filed its sworn statements, in response to the above request of February 9, 1955.

On June 23, 1955, the plaintiffs filed their motion for summary judgment. Attached thereto and made a part thereof are the above mentioned sworn statements of the Bank and an affidavit of Neilsen.

On July 2, 1955, the Bank's motions to dismiss and strike and plaintiffs' motion for summary judgment were argued and taken under advisement.

On September 20, 1955, the Bank filed its motion for summary judgment and, in support thereof, attached thereto (1) affidavit of V. T. Reece, Jr., its assistant trust officer; (2) a portion of the testimony of Neilsen

given by deposition taken on cross-examination by the Bank March 1, 1955, and (3) depositions of five of the plaintiffs taken on cross-examination by the Bank March 10, 1955. No counter affidavits were filed.

One June 8, 1956, the trial court entered its *Findings, Order, Judgment and Decree,* adjudicating the following:

1. Bank's motion to dismiss denied;

2. Bank's motion to strike denied;

3. Plaintiffs' motion for summary judgment granted and judgment entered in accordance with prayer of plaintiffs' complaint;

4. Bank's motion for summary judgment not expressly ruled upon.

The Bank is here by writ of error, seeking reversal of the judgment and an order directing summary judgment in favor of the Bank.

█ Both the Bank and the plaintiffs in their respective motions for summary judgment urge that there was no real issue of fact before the trial court. The fact that all parties so contend does not necessarily require the trial court to resolve the matter on one or the other of the motions for summary judgment. Each motion, together with evidentiary matters tendered in support thereof, must stand on its own and cannot be aided by the motion of the opposing party, with its supporting documents, for summary judgment.

In *Morlan v. Durland Co.,* 127 Colo. 5, 252 P. (2d) 98, we have a case almost parallel to the case at bar. There, in an action to reform a deed, the defendant had filed a motion for bill of particulars, and, pursuant to Rule 36, served interrogatories to be answered by plaintiff, which interrogatories the plaintiff answered, attaching to its answers all of the correspondence exchanged between the parties concerning the transaction involved in the suit. On filing of these answers to interrogatories, defendant, not having filed an answer, moved for summary judgment. A few days later plaintiff moved for summary judgment. Both parties stated, as in this case, that there

was no genuine issue as to any material fact. The trial court denied defendant's motion, granted plaintiff's motion, and entered judgment reforming the deed in accordance with the prayer of plaintiff's complaint. In reversing the trial court, this court said:

"* * * It is the law, that when defendants filed their motion for summary judgment they admitted thereby all facts properly pleaded by plaintiff, and as appeared in the record at that time, but such admissions imputed by law are confined to consideration of such motion only and within the limits of movants' theory of the law of the case. * * *.

"To warrant the granting of summary judgment, the situation must be such that no material factual issue remains in the case. The intent and purpose of the rule is that, where the facts are undisputed, or so certain as not to be subject to dispute, the court is in position to determine the issue strictly as a matter of law. It is properly to be exercised only where the facts are clear and undisputed, leaving as the sole duty of the court the determination of the correct legal principles applicable thereto. *Parrish v. De Remer,* 117 Colo. 256, 273, 274, 187 P. (2d) 597, 606; *Smith v. Mills,* 123 Colo. 11, 15, 225 P. (2d) 483, 485; see, also, *Flanders v. Kochenberger,* 118 Colo. 104, 111, 112, 193 Pac. 281, 285; *Tamblyn v. City and County of Denver,* 118 Colo. 191, 193, 194, 194 P. (2d) 299, 300. * * *.

* * *

" 'The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists. Each, in support of his own motion, may be willing to concede certain contentions of his opponent, which concession, however, is only for the purpose of the pending motion. If the motion is overruled, the concession is no longer effective. Appellants' concession that no genuine issue of fact existed was made in sup-

port of its own motion for summary judgment. We do not think that the concession continues over into the Court's separate consideration of appellee's motion for summary judgment in his behalf after appellants' motion was overruled.' *Begnaud v. White,* 170 F. (2d) 323, 327 (1948)."

Counsel for the Bank contend that the case in its then condition was not a proper case for summary judgment, and that the trial court decided six material issues of fact in granting plaintiffs' motion for summary judgment, and decided them erroneously. We now take up these alleged erroneous findings in the order as presented by the Bank.

### FINDING NO. 1

THAT THE PLAINTIFF IN ERROR BANK OFFERED OR SOLD THE SECURITIES IN QUESTION.

It is true that the trial court so decided. In so deciding, the trial court had before it the Bank's answers to the request for admissions. The Bank had admitted under oath that it had agreed to act as trustee, pursuant to written agreement attached to plaintiffs' complaint; that it had acquired title to the 3% royalty and held the same in trust; that it had prepared, signed and issued forty-eight participation certificates, each for a 1/16 of 1% royalty, all in the same form as Certificate No. 13, attached to plaintiffs' complaint; that it had sent said certificates through the United States mails to the respective purchasers in Colorado, together with forms of receipts therefor to be signed and returned by the purchasers in self-addressed envelopes, and that receipts were signed by the purchasers and by them returned to, and accepted by, the Bank; that it had not caused the securities to be registered and knew that no registration had been made. The trial court with these admissions of the Bank before it properly resolved as a matter of law and fact that the Bank *had offered* and *sold* the securities as contemplated by the Securities Act of 1933.

▮ Clearly the Bank's admitted actions in making

up, signing and delivering said certificates by means of the mails and without registration, fall within the inhibitions of Title 15, U.S.C.A., §77e, which, among other things, provides:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawfull for any person, directly or indirectly —

\* \* \*

(2) To carry or cause to be· carried through the mails \* \* \* any such security for the purpose of sale or for delivery after sale."

For violation of the above section, §77L, among other things, provides:

"Any person who — (1) offers or sells a security in violation of section 77e of this title \* \* \* shall be liable to the person purchasing such security from him \* \* \* [for] the consideration paid for such security \*· \* \*."

In *Schillner v. H. Vaughan Clarke and Co.,* 134 F. (2d) 875, it is said:

"In the case at bar the contract· of sale was concluded orally and the stock was paid for by the buyer without any use of the mails, but the mails were used for the delivery of the stock certificate to the buyers. In our opinion such a transaction falls within both the letter and purpose of the statute. Section 2(3) of the Act, 15 USCA #77b (3) provides that 'unless the context otherwise requires' the term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security for value. *Delivery of the stock certificate pursuant to a contract of sale would seem to be a 'disposition of \* \* \* a security' within this definition;* consequently the seller who mails the certificate to the buyer 'sells a security \* \* \* by the use \* \* \* of the mails.' " (Emphasis supplied.)

The United States Supreme Court, in *Securities and Exchange Commission v. Joiner Leasing Corp.,* 320 U. S. 344, 64 S. Ct. 120, 80 L. Ed. 88, said:

"It is clear that an economic interest in this well-

drilling undertaking was what brought into being the instruments that defendants were selling and gave to the instruments most of their value and all of their lure. The trading in these documents had all the evils inherent in the securities transactions which it was the aim of the Securities Act to end.

\* \* \*

"\* \* \* Rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."

We conclude that plaintiffs' admissions of fact warranted the trial court in finding as a matter of law that the Bank was in violation of the Act.

### FINDING NO. 2

THAT THERE WAS A PUBLIC OFFERING OF SAID SECURITIES EITHER BY SAID BANK OR IN WHICH THE SAID BANK PARTICIPATED.

Title 15, U.S.C.A., Section 77d, provides:

"The provisions of section 77e of this title shall not apply to any of the following transactions: (1) \* \* \* transactions by an issuer not involving any public offering; \* \* \*."

The above section provides terms and conditions whereby one may be exempt from the provisions of the Act. The Bank could escape liability imposed by the Act by proof of the fact or law that the offering was not public. There are no facts set forth in the affidavit of Neilsen or in the admissions of the Bank which warranted the trial court in concluding that the offering was or was not public. The only pertinent fact appearing in the affidavit and admissions is the fact that forty-eight certificates were issued to persons designated by Neilsen. There is nothing to show who these persons are,

whether they as a class were in need of the protection of the Act, whether they had access to the kind of information concerning the securities that registration would disclose, or whether they had such information and knowledge as would enable them as a class to fend for themselves.

The test as to whether or not an offering is public is a question to be determined from the facts in each particular case. An offer can be made to a large class and not be public, and conversely, to a small class and be public. The real test is — whether the particular class of persons affected need the information made available by registration.

A leading case in point is *Securities & Exchange Commission v. Ralston Purina Co.*, 346 U. S. 119, 73 S. Ct. 981, 97 L. Ed. 1496, wherein it is said:

"\* \* \* The design of the statute is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions. The natural way to interpret the private offering exemption is in light of the statutory purpose. Since exempt transactions are those as to which 'there is no practical need for [the bill's] application,' the applicability of §4 (1) should turn on whether the particular class of persons affected needs the protection of the act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.' "

In *Securities Exchange Commission v. Sunbeam Gold Co.*, 95 F. (2d) 699, it is said:

"The purpose of the Securities Act is stated in its title to be: 'To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof and for other purposes.' 48 Stat. 74.

"\* \* \* Being an exception from the general policy of the act, anyone claiming to be within its terms has the burden of proof that he belongs to the excepted class — that is, that his offer is not to the public. *Schlemmer v.*

*Buffalo R. & P. R. Co.*, 205 U. S. 1, 27 S. Ct. 407, 51 L. Ed. 681, and cases there cited."

In *Campbell v. Degenther*, 99 F. Supp. 975, Degenther issued thirty-two participation certificates granting to the holders thereof an interest in certain oil leases. The certificates were issued to his friends and other persons introduced to him by his friends. The court held that Degenther, claiming exemption from the Act because the offering was not public, had the burden of proving the exemption and had met that burden.

 In the case before us, the Bank had made no admissions in this respect and Neilsen's affidavit is silent on the question. Only from these two sources could information be considered in ruling on plaintiffs' motion for summary judgment. The court had no facts before it from which it could be determined whether the offering was or was not public; this state of the record compelled denial of plaintiffs' motion for summary judgment. The Bank was entitled to set up as one of its defenses the fact that the offering was not public and therefor it was not subject to the Act.

Counsel for the plaintiffs state in their brief that the offering was: "* * * through advertisements in the Denver Post * * * by use of the telephone, to assorted persons, some unknown to Neilsen theretofore."

This and all other information touching on the methods of sale was pertinent to the issue. The business knowledge of the persons to whom sold, the inquiries, investigations and examinations of the properties in Utah by certain purchasers appear in the depositions of the plaintiffs and Neilsen elicited by the Bank on cross-examination. The Bank is in no manner bound by these statements and they cannot be used by plaintiffs in aid of their motion for summary judgment.

### FINDING NO. 3

THAT IT WAS NECESSARY FOR THE BANK TO REGISTER OR CAUSE SAID SECURITIES TO BE

REGISTERED AS REQUIRED BY THE FEDERAL SEC ACT, 15 U.S.C.A., §77.

The answer to this contention is found in the answers to 1 and 2, supra.

### FINDING NO. 4

THAT THE DEFENDANTS IN ERROR PAID THE RESPECTIVE AMOUNTS FOR SAID SECURITIES FOR WHICH JUDGMENTS WERE RENDERED AGAINST SAID PLAINTIFF IN ERROR BANK.

■ There was no error in this finding. Attached to plaintiffs' motion for summary judgment is the affidavit of Neilsen, filed in conformity with Rule 56, R.C.P. Colo., wherein it is set forth that:

"Each of the plaintiffs did purchase the certificates mentioned in the complaint, and paid therefor the amounts set forth in the complaint." (The exact amount paid by each is set forth in the complaint.)

The Bank filed no counter affidavit; therefore, there was no issue of fact, and the trial court on motion for summary judgment was entitled to accept the affidavit as true and in lieu of evidence of the facts alleged.

### FINDING NO. 5

THAT THE PLAINTIFF IN ERROR BANK WAS AN ISSUER, UNDERWRITER, DEALER OR ONE WHO PARTICIPATED WITH NEILSEN AS AN ISSUER, UNDERWRITER OR DEALER.

Section 77b (4) states:

"The term *issuer* means every person who issues or proposes to issue any security * * *."

■ The Bank acquired and held title to the royalty interests; it prepared, signed and delivered the participation certificates to the parties designated by Neilsen pursuant to the terms of the trust agreement and by its conduct comes squarely within the term *issuer* as set forth above. Clearly the Bank participated with Neilsen in the issue of the securities, although it might be more accurate to say that Neilsen participated with the Bank,

since all he did was furnish the names and addresses of the purchasers.

### FINDING NO. 6

THAT THE PLAINTIFF IN ERROR BANK PARTICIPATED IN THE SALE OF SAID SECURITIES IN A MANNER OTHER THAN PERFORMING CERTAIN MINISTERIAL AND CUSTODIAL DUTIES.

We do not find in the record any specific finding as stated above; however, other findings and the judgment clearly indicate that the trial court concluded that the Bank's participation as admitted by it, whether performing only ministerial or custodial duties, came within the inhibitions of the Act. Applying the law to admitted facts, this is a proper legal conclusion.

The Bank filed a designation of record and an amended designation which encompassed all of the matters necessary to a proper determination of the case by this court. Plaintiffs filed a supplemental designation of record, and pursuant thereto there is included in the record all proceedings had with reference to contempt proceedings against one of counsel. None of the litigants in this action were parties to or had any interest in the contempt proceedings, and nothing that transpired therein could have any bearing on the issues involved in this action. These contempt proceedings serve only to clutter up the record and place an additional and useless burden on this court and should not have been included in the record before us. The cost thereof is assessed against the plaintiffs.

Concluding, as we do, that the trial court was in error in finding that the offering was public, without facts before it which it could consider on motion for summary judgment justifying such finding, the judgment is reversed and the cause remanded with directions to the trial court to enter an order denying plaintiffs' motion for summary judgment, denying the Bank's motion to dismiss, its motion to strike, and its motion for summary judgment, and to grant the Bank a reasonable time to

answer plaintiffs' complaint. That the issues then presented by plaintiffs' complaint and the answer thereto be determined consistent with the views herein expressed.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ not participating.