548 P.2d 127 (1976)
Bernard L. LOWERY, Sr., and Joanne M. Lowery, Plaintiffs-Appellants,
v.
FORD HILL INVESTMENT CO., a partnership, and Wynn D. Crew, as general partner and Individually, Defendants-Appellees.
No. 75-114.
Colorado Court of Appeals, Div. III.
January 2, 1976.
Rehearing Denied January 29, 1976.
Certiorari Granted April 5, 1976.
*128 Stitt, Wittenbrink & Roan, P. C., R. J. Wittenbrink, Denver, for plaintiffs-appellants.
Wynn D. Crew, pro se.
Selected for Official Publication.
RULAND, Judge.
Plaintiffs, Bernard and Joanne Lowery, initiated this action to rescind an installment sales contract which they executed for purchase of a condominium from defendant Ford Hill Investment Co. Plaintiffs alleged as the basis for rescission of the contract that it constituted a security and that Ford Hill had failed to file a registration statement as required by the Colorado Securities Act, § 11-51-101 et seq., C.R.S.1973. In the alternative, plaintiffs contended that even if the sales transaction were exempt from registration under the Securities Act, defendants were liable for misrepresentation.
Following a trial to the court, the court determined that: (1) The transaction did not involve the sale of a security; (2) even if the sale of a security were involved, it was exempt from the requirements of the Securities Act as a private offering; and (3) even if the sale of a non-exempt security were involved, defendants were not liable to plaintiffs because defendants had not made any material misrepresentation of fact. While we disagree with the trial court's conclusion that the transaction did not involve the sale of a security, we affirm the judgment.
The following facts are not disputed. Ford Hill is a partnership and defendant Wynn Crew is the managing partner. Ford Hill constructed a six-unit condominium in Breckenridge, Colorado, and on August 21, 1971, these units were listed with a broker under an exclusive right to sell agreement.
Some time prior to February of 1973, plaintiffs were considering the possibility of purchasing a condominium in the Breckenridge area. A mutual friend of plaintiffs and Crew advised plaintiffs that Ford Hill had some units available and plaintiffs thereafter contacted Crew. Crew obtained a release by the broker from the exclusive *129 listing, and plaintiffs and Crew agreed upon the terms for purchase of one of the units, with the result that the amount of the broker's commission was deducted from the listed price.
By the terms of the installment sales agreement, plaintiffs agreed to be bound by the provisions of the Condominium Declarations and a management rental agreement between the "Ford Hill Condominium Owners Association" and Ford Hill. The purpose of the management agreement is to provide for rental of the unit when it is not being occupied by the owners, and Ford Hill was designated as the manager. As of the date of trial, the Association consisted of Ford Hill and plaintiffs only since none of the other units had been sold.
The closing on the purchase occurred in June of 1973. However, Ford Hill was not successful in renting the unit during the following fall and winter. Accordingly, plaintiffs notified Ford Hill in April of 1974 that they elected to rescind the transaction. Each of the rulings by the trial court is challenged in this appeal and will be discussed separately.

I. The Contract as a Security
Plaintiffs contend that the trial court erred in its conclusion that the sales transaction did not involve the sale of a security. We agree.
The definition of a security in § 11-51-102(12), C.R.S.1973, includes an investment contract. In Sauer v. Hays, Colo.App., 539 P.2d 1343, in conjunction with a thorough discussion of the authorities bearing on the concept of an investment contract under the securities laws, this Court adopted the test announced in S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244, as applied in S.E.C. v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53. By those cases, an investment contract was defined as a "contract . . . whereby a person invests his money in a common enterprise and is led to expect profits" from the efforts of the promoter, the promoter's efforts being the "undeniably significant ones . . . which affect the failure or success of the enterprise."[1] In applying this concept, form is disregarded for substance and emphasis is placed on economic reality. See United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621; Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564; see also Raymond Lee Organization, Inc. v. Securities Commission of Colorado, Colo.App., 543 P.2d 75, (announced September 16, 1975), cert. granted (December 22, 1975).
The first requirement of this test is an investment of money. On the issue of why plaintiffs purchased the condominium, the trial court found,
"[T]here were two reasons that . . . [plaintiffs] were buying this condominium, one was that they wanted the place that they could use occasionally themselves. Their children being skiers and they being at least he being a fisherman. So, that the sole purpose the Court finds as a matter of fact that purchasing the condominium was not for an investment purpose, but there was a secondary purpose which was for the recreation of. . . [plaintiffs]."
We conclude that the transaction does not lose its investment characteristic merely because plaintiffs also sought a secondary intrinsic benefit, and thus plaintiffs' agreement to purchase the condominium satisfied the investment requirement.[2]
*130 The second criterion for determining whether an investment contract exists is whether the transaction involves a common enterprise. In S.E.C. v. Continental Commodities Corp., 497 F.2d 516 (5th Cir.), the Court interpreted this requirement to depend on whether the "fortuity of the investments collectively is essentially dependent on promoter expertise." See also S.E.C. v. Glenn W. Turner Enterprises, Inc., supra; S.E.C. v. Koscot Interplanetary, Inc., 497 F.2d 473 (5th Cir.). In the context of the case at bar, we hold that the elements of a "common enterprise" are present.
The rental management argeement is an integral part of the sales transaction. This agreement, with Ford Hill as the managing agent, establishes an investment scheme whereby plaintiffs derive income from the unit rentals. The success of this investment scheme is interwoven with the efforts and performance of Ford Hill in that: (1) Ford Hill has the sole discretion to establish the rental rates; (2) Ford Hill is in charge of promotional activity; (3) Ford Hill is in charge of supplying services to maintain the rentability of the units; and (4) the management rental agreement extends for a period of five years and is renewable for an extended term without further action on the part of the condominium owner's association. Consequently, the income derived is inextricably tied to the efficiency of Ford Hill's performance.
The third element of the test is whether the investor is led to expect profits from the efforts of others where the "efforts made by those other than the investor are the undeniably significant ones . . . which affect the failure or success of the enterprise." S.E.C. v. Glenn W. Turner Enterprises, Inc., supra. While the record reflects that plaintiffs are entitled to locate potential renters, it is apparent from the management rental agreement that Ford Hill is primarily responsible in this regard and thus the final criterion for establishing an investment contract under the Securities Act is satisfied.
Since we find this transaction constitutes a sale of a security, § 11-51-106, C.R.S.1973, applies. This section prohibits the sale of any security unless it is registered or exempt from registration.

II. Exemption from Registration
Plaintiffs contend that the court erred in determining that there was no "public offering" involved in the plaintiffs' purchase and that, therefore, the transaction was exempt from the Securities Act. We disagree.
Section 11-51-114(2)(i), C.R.S.1973, provides that the sale of a security "not involving any public offering" is exempt from registration. The phrase "not involving any public offering" is specifically defined in the statute as a transaction where: (1) The seller reasonably believes that the security is purchased for an investment and not for resale; and (2) each offeree, by reason of his knowledge of the affairs of the issuer of the security, "or otherwise," does not require the information required in a registration statement.
At the outset we note that the needs of each offeree must be emphasized in determining whether an offer is deemed to be public. The burden is on the one claiming the exemption to show that his offer is not to the public. See Central Bank & Trust Co. v. Robinson, 137 Colo. 409, 326 P.2d 82; Garfield v. Strain, 320 F.2d 116 (10th Cir.); S.E.C. v. Sunbeam Gold Mines Co., 95 F.2d 699 (9th Cir.).
For guidance in the interpretation of the private offering exemption, the State *131 of Colorado, Division of Securities, adopted certain regulations in September of 1972 pursuant to § 11-51-119, C.R.S.1973. See Division of Securities Rules and Regulations 8.15 (1972). The regulations confirm that the issue of whether an exemption involves a public offering is a question of fact dependent upon all surrounding circumstances. Criteria which the Division points to as relevant to this determination are: (1) The number of offerees and the number of actual purchasers; (2) the offerees' relationship to the issuer, i. e., whether a preexisting personal or business affiliation with the issuer could be reasonably expected to qualify the offeree to fend for himself and not need the protection afforded by the registration requirement; (3) the offerees' knowledge, i. e., special information or access to material data concerning the issuer, its financial condition, business operations, etc.; (4) the manner of offering, i. e., the size, amount and number of units, type, nature and scope of distribution, and whether a commission is paid directly or indirectly in connection with the sale; (5) whether the offer is made in a newspaper, magazine or other printed communication intended for general circulation or public distribution; and (6) a commitment by the offeree that the security is taken for investment only and not for the purpose of resale or distribution.
Based on the evidence, the trial court found that plaintiffs purchased the condominium for two purposes, viz., investment and secondarily for personal use; thus, the first requirement of the exemption statute was satisfied since this was an investment not intended for resale. The trial court also found that plaintiffs did not purchase the unit as a result of any public solicitation but rather from contacting Crew through a mutual friend. While we agree with plaintiffs that this fact alone is not determinative of the exemption issue, we conclude that the trial court's decision was correct.
Plaintiffs do not argue that the transaction involved here was a public offering on the basis of any of the criteria suggested by the Division of Securities except two: (1) They assert that they were not sophisticated investors and thus needed the protection of the Act; and (2) they insist that irrespective of their personal relationship with Crew, they had no advantage over the public at large in acquiring the information which would normally be disclosed by a registration statement, e. g., estimated cash proceeds to be received by Ford Hill from sale of the unit; capitalization and long-term debt of Ford Hill; a balance sheet and profit and loss statement from Ford Hill; and a statement by Ford Hill of the general competitive conditions in the condominium industry. See § 11-51-110, C.R.S.1973.
However, contrary to plaintiffs' contentions here, their own evidence supports the conclusion that the information normally contained in a registration statement was not material to them in making the purchase, and thus was unnecessary. The thrust of their evidence was directed towards the rental income of the condominium. Plaintiffs contend there was a misrepresentation as to the potential rental income and a failure to disclose the information which was necessary for making an informed judgment with respect to this rental income. On supporting evidence, the trial court specifically found that no misrepresentation was involved and that Crew made full disclosure of what he thought the future would being for this condominium. Thus, the trial court adopted Crew's testimony that he advised plaintiffs that the rental market in the Breckenridge area was depressed. Since plaintiffs were informed of the market conditions and since information regarding Ford Hill's financial condition was irrelevant for making an informed investment decision concerning the rental potential, we affirm the trial court's conclusion.
Plaintiffs contend that even if the information provided them by Crew were sufficient for their purposes, absent a showing that similar information was provided *132 to all prospective purchasers of the condominiums, Ford Hill has not sustained its burden of proof as to the exemption. This contention lacks merit.
Although Ford Hill listed the units for sale with a broker in August of 1971, and distributed some 50 brochures to that broker for subsequent distribution to prospects, no sales had taken place through the date of trial in January of 1975, and there was no evidence that the broker made any attempt to sell any of the units. Hence, there is no basis in the record before us to consider the status of any other offerees.

III. Misrepresentation
Even though Ford Hill was not required to file a registration statement, plaintiffs contend that the trial court erred in not imposing liability upon Ford Hill under § 11-51-125(1), C.R.S.1973. This statute provides a remedy for sale of an exempt security if the issuer makes "untrue statements of material fact or omission to state a material fact necessary to make the statements made." However, based upon conflicting evidence, the trial court determined that Ford Hill made no misrepresentations under this section. The findings are supported by evidence and may not be disturbed on this appeal. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537; Thiele v. State, 30 Colo.App. 491, 495 P.2d 558.
Judgment affirmed.
BERMAN, J., concurs.
SMITH, J., specially concurs.
SMITH, Judge (specially concurring).
While I concur in the result reached by the majority, I disagree with their determination that plaintiffs' contract to purchase a condominium is a security under § 11-51-102, C.R.S.1973.
Apparently the majority is convinced that the primary motivation in plaintiffs' purchase of this condominium was their desire to invest capital in such a way as to obtain a good return on the money invested. If this had been plaintiffs' sole purpose, and if the trial court had so found, I would have concurred in the majority's determination that the contract was a security, as well as concurring in the result they reach. My reading of the trial court's findings, as quoted by the majority, leads me however to conclude that a desire on plaintiffs' part personally to use, or in a sense consume, the property purchased was also a significant factor. I would surmise that the condominium declarations and rental management agreement were considered by plaintiffs as merely an attractive kind of assurance that they would be able to pay for what they considered to be their vacation home. I have found no case authority under the Colorado act, nor the federal act for that matter, which supports the proposition that either Congress or the General Assembly intended home purchases to be regulated in the same manner as intangible personal property such as stocks, bonds, or investment contracts. Even those one or two federal cases concerning promotional sales of real estate have dealt only with purchases made solely for investment.
The better reasoned rule in my view would be that a real estate purchase contract should not be deemed an "investment contract" under § 11-51-102, C.R.S.1973, unless its sole purpose is investment or at least unless the investment factor is of such primary significance that other purposes are merely incidental and exert no material influence on a purchaser's decision to buy.
Because of my feelings on this issue, I need not comment on the other aspects of the majority opinion.
NOTES
[1] The validity of this test was recently affirmed in United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621. "The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."
[2] Plaintiffs' dual purpose for purchasing the condominium distinguishes this case from United Housing Foundation, Inc. v. Forman, supra, wherein the Court specifically held that "there can be no doubt that investors were attracted solely by the prospect of acquiring a place to live, and not by financial returns on their investment." (emphasis added) Moreover, contrary to the facts of this case, the investors in United Housing Foundation, Inc. v. Forman, supra, were informed of the restriction against reselling their apartments for profit, and all investors who so desired could receive back their initial payment in full.