## William W. Rice, Appellant, v. Samuel S. Bogart et al., Appellees.

### Gen. No. 36,712.

Opinion filed November 6, 1933.

CLARENCE A. TOOLEN, for appellant.

IRWIN N. WALKER and STUART B. KROHN, for certain appellees; OTA P. LIGHTFOOT and STUART B. KROHN, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff filed an amended statement of claim demanding the return of $2,000 paid by him to the Absopure Oil Company under a contract hereinafter described, together with $250 attorneys' fees. The action was based on section 37 of the Illinois Securities Act, sometimes called the Blue Sky Law (see Cahill's Ill. Rev. St. ch. 32, ¶ 290) being "An Act relating to the sale or other disposition of securities and providing penalties for the violation thereof and to repeal Acts in conflict therewith," in force June 10, 1919.

Defendants are officers and directors of the company alleged to be liable under the statute, and Noggle is the agent through whom the transactions were nego-

tiated. The amended statement of claim was stricken on motion of defendants, and plaintiff electing to stand by his amended claim, judgment was entered against him, which he seeks to reverse by this appeal. The briefs present two questions for our decision.

The first concerns the question of jurisdiction. Defendants contend that the judgment was proper for the reason that the municipal court was wholly without jurisdiction to try an action of this kind. This question was not raised in the trial court but is urged here. The point requires a construction of section 2 of the Municipal Court Act, Cahill's St. ch. 37, ¶ 390 (Smith-Hurd Ill. Rev. St. 1933, ch. 37, sec. 357, p. 959). Defendants point out that actions 'involving (as here) more than $1,000 are limited by that section to three classes: (1) contracts express or implied; (2) for the recovery of personal property; and (3) for damages for conversion of or injury to personal property. They say that this action does not come within any one of the three classes; that it is in fact a suit to recover a penalty, and, therefore, since the amount of the claim is for more than $1,000, the municipal court was wholly without jurisdiction to hear and determine the issues.

Defendants contend (rightly, as we think) that where the court is wholly without jurisdiction of the subject matter it cannot acquire jurisdiction, even by consent of the parties; that in such a case neither appeal nor writ of error will confer jurisdiction on the reviewing court, and that the question of whether the courts have jurisdiction of the cause may in such case be raised for the first time in the reviewing court. *People v. Industrial Sav. Bank,* 275 Ill. 139.

Defendants argue that an action based upon this Securities Act, Cahill's St. ch. 32, ¶ 254 *et seq.,* is substantially an action in debt rather than an action in assumpsit and cite *People v. Dummer,* 274 Ill. 637. The *Dummer* case does not, as we understand it, sup-

port this contention. That case holds that taxes against property are enforced contributions independent of any agreement express or implied on the part of the owner of the property to pay same, and that there is no contract either express or implied that the taxpayer will make such payment; that the levy of the taxes does not create the relation of debtor and creditor as usually understood, but that by reason of statutory provisions an action either of debt or in assumpsit will lie for the collection for the same. The court there said that such a suit when brought was not an action on the contract express or implied, and that as the amount claimed exceeded $1,000, the municipal court was wholly without jurisdiction under the statute.

The opinion carefully distinguishes between a suit brought for the purpose of collecting taxes and one where a contract is implied by reason of a statutory provision and because of the acts of defendant with reference thereto. *Harty Bros. v. Polakow,* 237 Ill. 559 (on which plaintiff here relies) is cited. The opinion also points out that the term "implied contract" has been in our law applied to a class of obligations which are created by law without regard to the assent of the parties. Such contracts are described in the opinion as "constructive contracts," and the supposed promises are said to be more or less fictitious, as they are said to be in *Board of Highway Com'rs v. City of Bloomington,* 253 Ill. 164, Ann. Cas. 1913 A 471. In Restatement of Law, vol. 1, sec. 5, these contracts are described as "quasi-contracts"; that is, obligations created by law for reasons of justice which were ordinarily enforced at common law in an action of assumpsit upon the theory that there was an implied promise that one would do what he ought to do. Such obligations at the time of the enactment of the Municipal Court Act, Cahill's St. ch. 37, ¶ 389 *et seq.,* were

quite generally recognized in our law as contractual in nature, and we do not doubt that it was the intention of the legislature to confer jurisdiction upon the municipal court to try actions brought upon such quasi-contracts without limitation as to the amount claimed.

While this precise question has not been raised before in this court, so far as we are aware, we have hitherto taken jurisdiction to review judgments in similar cases. *Jaffe v. Goldner,* 251 Ill. App. 188, and *Dobal v. Guardian Finance Corp.,* 251 Ill. App. 220. We now hold that the action is contractual in its nature and that the municipal court was not without jurisdiction by reason of the amount claimed.

In the second place it is argued by defendants that the statement does not state a cause of action for the reason that the instruments of writing described in the statement are documents to which the provisions of the Securities Act, or Blue Sky Law as it is called, are not applicable.

The averments of the statement are in substance that Absopure Oil Co. is a corporation organized under the laws of the State of Illinois; that September 20, 1929, it "sold to the plaintiff a certain profit sharing or investment contract or security," for which plaintiff paid to the company $1,000; that September 30, it sold to plaintiff "a certain other profit sharing or investment contract" for another $1,000; that "said profit sharing or investment contracts so sold to the plaintiff by said Absopure Oil Company, as aforesaid, were not securities known as securities in Class A, Class B or Class C under the terms and provisions of the Securities law of the State of Illinois, but, on the contrary thereof, were securities in Class D under the terms and provisions of said law, being speculative securities based on prospective income"; that defendants had not prior to the sale of

the same complied with the terms and provisions of the Securities Law regulating the sale of this class of securities; that at the times of these respective sales defendant Charles H. Brunner was the president and director of the Absopure Co., Bogart vice president and director, L. E. Brunner secretary and treasurer, Blanchard and Peterson directors; and that R. W. Noggle was employed by the Oil Co. as solicitor, agent or broker "for the sale of said investment or profit sharing contracts"; that September 20, 1929, defendants, through Noggle, made a sale of "a certain investment or profit sharing contract, wherein and whereby the defendants pretended to sell to plaintiff five certain oil pumps numbered 152, 153, 154, 155 and 156, together with 500 gallons of lubricating oils suitable for use in automobiles and automotive machinery by the execution of a certain bill of sale signed by the said Absopure Oil Company by Charles H. Brunner, president, and at the same time and simultaneously with the execution and delivery of said bill of sale entered into a pretended service contract with the plaintiff," whereby it was agreed that the company should have the complete possession of the pumps and exclusive right to use and operate the same for sale and distribution of the company's oil; that these pumps should be installed at such place or places as the company might select, the company to maintain, service and supply said pumps with necessary oil and pay all permit fees, licenses, taxes, insurance premiums, and other necessary charges; that in the event of the loss of any pumps by theft, fire or storm while in the possession of the company under said agreement, the company would replace such pumps lost or destroyed with other pumps of a similar capacity without cost to plaintiff, and that on or before the 15th day of every month during the term of the contract, the company should set aside for payment to the

owners of pumps installed and operated by the company a sum to be fixed by the company but not less than a sum equal to six cents per gallon on all oil sold through the owners' pumps and all other pumps operated by the company under like agreements during the previous calendar month; that thereupon the company agreed to pay to plaintiff "as rental for the use of his pumps that proportion of said sum which the number of pumps owned by said plaintiff during said calendar month shall bear to the total number of pumps operated by the company under like agreements during said calendar month, which monthly payment the plaintiff agreed to accept in full satisfaction of the company's obligations for rentals under said contract, the initial payment to be for the calendar month beginning next after the date of the contract, and that also on the 30th day of September, A. D. 1929, a similar bill of sale and service contract was purchased by the plaintiff from the defendant, the Absopure Oil Company, in which there was a pretended sale by said company to the plaintiff of five oil pumps numbered 168, 169, 170, 171 and 172, together with 500 gallons of lubricating oils, suitable for use in automobiles and automotive machinery, for which two sales above set forth the plaintiff paid to the defendant Absopure Oil Company, the sum of $2,000, as herein above set forth."

The statement also avers that neither defendants nor any one of them at any time had possession of the pumps mentioned; that there was no intention of delivering the pumps to plaintiff, but that the sole inducement to plaintiff for the purchase of the pumps and the execution of the service contracts was the profit that was to be derived from the alleged service contract, and that the pretended bills of sale and the pretended service contracts taken together were in reality and effect a profit sharing investment or

security, as defined in the Securities Law of the State of Illinois; that the pretended sales of these pumps and these service contracts were two of many such sales and transactions, said defendants having made such sales to other persons repeatedly and in violation of and contrary to the terms and provisions of the statute in such case made and provided; that the defendants named authorized the sales with knowledge on the part of the directors and officers; that Blanchard and Peterson were then in the employ of Armour & Co., and that Blanchard, director of the corporation, had knowledge of these sales and personally induced several persons to purchase similar contracts and received a commission from Absopure Oil Co. on the transactions; that Blanchard held out and represented that a contract had been made by and between the Absopure Oil Co. and Armour & Co., whereby Armour & Co. agreed to purchase large quantities of the oil to be sold by the Absopure Oil Co., and that the representations were part of the inducement that led the plaintiff to make the purchase aforesaid, and that each of the defendants knowingly performed some act or in some way furthered such sales; that plaintiff has elected and does thereby elect to declare these sales null and void, and that the same are null and void by virtue of the statute; that plaintiff has tendered to defendants and each of them the return of the said bills of sale and service contracts and offers to return them to defendants, or any one of them; that plaintiff demands of defendants the return of the said sum of $2,000, together with reasonable attorney's fees to the amount of $250.

It is the contention of defendants that these contracts as set forth in the statement of claim are known as "service contracts" pure and simple; that they do not partake of the nature of an investment or profit sharing contract as defined in the statute, and that

these transactions were not infractions of section 2 of the Securities Act. Cahill's Ill. Rev. St. 1931, ch. 32, ¶ 255.

Defendants contend that this is so because, they say, the agreements (contrary to the facts as we shall later see) are not secured by title to or interest in or any lien or charge upon the capital or any property or assets of the issuer thereof, as provided by the statute. Defendants say that the pumpholder looked entirely to his own pumps for his profits and return on his investments; that he had no interest whatever in the corporate assets of the defendant, Absopure Oil Co.; that he did not participate in the profits of the Absopure Oil Co.; that he had no interest of any kind in the corporation, nor did he expect any return from the profits realized by defendant corporation in its sale of oil, nor was his contract secured by a title to or interest in or any lien, or charge upon, the capital or any property or assets of the company. They also say that the company did not by the service contract promise, offer or become obligated to the owner of the pump for any part of the company's assets or the business profits; that the relation between the company and plaintiff created by the agreement was not that of the issuer and investor, but was merely that of employer and employee.

Defendants say that they have searched for authorities and have been unable to find any case where any court has ever defined a service contract as being a "security" within the meaning of the Securities Act. They admit that in some States like South Dakota the Securities Act expressly includes service contracts as coming within the term "security," but they say that unless it is specifically covered by the statute no court has ever held that a service contract can come within the term "security." In support of their contentions are cited *Lewis v. Creasey Corp.,* 198 Ky. 409; *Creasy*

*Corp. v. Enz Bros. Co.,* 177 Wis. 49. The cases cited do not sustain the contention of defendants.

The Kentucky act provided in substance that every person who should "sell or negotiate for the sale of any contract, stock, bonds *or other securities* issued by him," should be known as a domestic investment company, and the controversy between the parties in *Lewis v. Creasey Corp.,* concerned whether the word "contract" should be limited in meaning to security contracts. It was argued by defendant in that case that the word "contract" as used in the statute meant more than is ordinarily understood as a security investment, and that the contract was broad enough to cover all classes of contracts which might be an instrumentality for the perpetration of fraud. The court said that from a consideration of the whole act it was apparent that the contract referred to in the statute was a "security contract" only that it was not the intention to supervise or regulate commercial contracts; that such universal guardianship was never intended; that the cases relied on, including *Standard Home Co. v. Davis,* 217 Fed. 904, and *State v. Gopher Tire & Rubber Co.,* 146 Minn. 52, gave little if any light upon the question; that some of the statutes of other states expressly included "membership contracts," and that in South Dakota the statute expressly mentioned "service contracts." The Kentucky court also had before it the case of *Creasy Corp. v. Enz Bros. Co.,* decided in Wisconsin, which construed the identical contract then before the court and held that it did not come within the purview of the law of Wisconsin. The Kentucky court conceded that perhaps a contract of that kind should be regulated and agreed that such regulation would be proper under the exercise of the police power, but thought the terms of the statute were not sufficiently comprehensive to include it. These cases are interesting but not persuasive.

Neither the Wisconsin nor the Kentucky statute was so comprehensive as the Illinois act, and these cases give little help upon the precise question we are here called upon to decide.

Defendants in their argument have set out the alleged bills of sale and the contracts in full, although, as plaintiff points out, these do not appear in the record. The record proper discloses only a statement of claim which was stricken apparently for the reason that in the opinion of the court it did not, as a matter of law, state a case.

Contrary to the statements of defendants heretofore cited, we hold the contracts with plaintiff conveyed an interest in property of the defendant company and are security contracts covered by the statute.

The transactions set forth in plaintiff's statement and documents executed by the Absopure Oil Company disclose the sale to plaintiff of an interest in all of the company's oil sold by the company through all the pumps operated by the company under like contracts. These purported to convey to plaintiff the right to have the company set aside out of the proceeds of such sales of oil a sum to be fixed by the company as plaintiff's share in the profits which should not be less than six cents a gallon. This conveyed an interest, namely, a right in property less than the title. 33 Corpus Juris 262.

Essentially the bills of sale, together with the contracts, reading the same as they are set up verbatim, seem to be the kind of instruments from the sale of which it was the intention of the legislature to protect the community. The investment was highly speculative in its nature, and while differing in many respects, was not altogether unlike that considered by the second division of this court in *Prohaska v. Hemmer-Miller Development Co.*, 256 Ill. App. 331, where the provisions of the statute were held applicable.

We hold that the statement of claim set up a good cause of action under the statute and that the court erred in granting the motion of defendants to dismiss the suit. The judgment is therefore reversed and the cause remanded for proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

McSurely and O'Connor, JJ., concur.