STATE of Oklahoma ex rel. Bruce W. DAY, Administrator of the Department of Securities and for the Oklahoma Securities Commission, Appellee,

v.

PETCO OIL & GAS, INC., a Texas Corporation, Appellant.

PETCO OIL & GAS, INC., a Texas Corporation, Petitioners,

v.

David M. COOK, Judge of the District Court of Oklahoma County, Respondent.

Nos. 49054 and 49806.

Supreme Court of Oklahoma.

Jan. 11, 1977.

Joseph C. Long, Norman, Michael R. Mallonee, Oklahoma Securities Commission, John E. Brewster, Jr., Oklahoma City, for appellees.

Gerald M. Birnberg, Bellaire, Tex., Michael A. Maness, Houston, Tex., for appellant.

Lewis Barber, Jr., Oklahoma City, for appellant and petitioner.

James O. Goodwin, Tulsa, for petitioner.

Bruce W. Day, Oklahoma Securities Commission, Oklahoma City, for respondent.

DAVISON, Justice:

Appellant corporation, Petco Oil and Gas Incorporated, promotes and sells undivided small fractional interests in oil and gas properties, coupled with an operating agreement.

In September, 1975, the Oklahoma Securities Commission initiated an investigation into the operations of Petco and other companies engaged in the sale of undivided fractional oil and gas interests in the State of Oklahoma.

Pursuant to its investigative powers, the Commission issued and served upon appellant corporation a subpoena duces tecum ordering that certain corporate records be produced.

In response to the subpoena issued, Petco's counsel appeared and denied the Securities Commission's authority to further proceed with its investigation on the

grounds that the oil and gas interests sold by Petco were not "securities" under Oklahoma law and therefore were not within the regulatory or investigative jurisdiction of the Commission.

Shortly thereafter, the Commission instituted a suit against Petco in the District Court of Oklahoma County alleging, among other things, that Petco was engaged in the sale and the offering for sale of unregistered securities, that Petco through its agents and officers was employing "devices, schemes, or artifice to defraud, or making untrue statements of material facts and omitting statements of material facts necessary to keep from misleading prospective purchasers." In its petition, the Commission prayed that Petco be enjoined and restrained from: (1) Issuing, offering or selling any undivided interests or participation in oil and gas leases which are coupled with operating agreements, (2) acting as unregistered securities agents and/or broker dealers, (3) making false and misleading statements or failing to disclose material facts, and (4) violating the advertising, filing and approving provisions of the Oklahoma Securities Act. Additionally, the Commission prayed that the court appoint an equity receiver or conservator to take into his immediate custody, control and possession the assets and property belonging to or in the possession of Petco.

On October 8, 1975, the trial court entered a restraining order prohibiting Petco, its officers, agents and employees from continuing to sell or offer for sale the interests above described without first having registered them for sale with the Oklahoma Securities Commission. On October 16, 1975, the Oklahoma Securities Commission's motion for temporary injunction came on for hearing before the trial judge, who after receiving into evidence certain stipulations, testimony and exhibits, granted the temporary injunction. In the order granting the temporary injunction, the court set forth the basis for its decision:

"The Court bases its decision on the finding that the interests being offered and sold to investors by the Defendant, PETCO, are securities within the meaning of that term as it appears in the Oklahoma Securities Act. The Court's finding that the transactions in question are securities is based on the reasoning that the overall intent and purpose of the Oklahoma Securities Act, as expressed by the Oklahoma Legislature, requires that such transactions be regulated as securities.

It is the opinion of the Court that it was the intent of the Oklahoma Legislature to exclude from the definition of a security the lease broker and the interests in oil and gas leases which he sells. [Section 2(21)]. But when these interests are coupled with other terms, such as management contracts and operating agreements, they become securities and are subject to the intended purview of the Oklahoma Securities Act."

Petco duly perfected an appeal (Case No. 49,054) from the order granting the temporary injunction.

In January, 1976, the trial court ordered the appointment of a receiver for Petco.

In June, 1976, the petitioner applied to this Court, requesting that it assume original jurisdiction and issue an Alternative Writ of Prohibition restraining the respondent, the trial court, from exercising further jurisdiction. The action brought in this Court seeking the Alternative Writ of Prohibition is Case No. 49,806. For the convenience of disposing of these matters, we will treat these cases as if consolidated.

The primary issue raised by the appellate procedures is: Whether the interests offered and sold by appellant are excluded from coverage under the Oklahoma Securities Act by virtue of the exclusionary language of 71 O.S. § 2(*1*), (Laws 1961, p. 580).[1]

1. The exemption which we are asked to construe in this case was the law at the time that the controversy between the parties arose. However, 71 O.S.Supp. 1976 § 2(20)(R) includes interests in oil, gas or mineral leases in the definition of a security and at the same time exempts transactions involving leases or interest therein between parties each of whom are engaged in the business of exploring for or producing oil or gas or other valuable minerals

The applicable exclusion provided:

" 'Security' does not include  *  *  * any oil, gas, or mining title or lease or any certificate of interest or participation, or conveyance in any form, of an interest therein, or in payments out of production under such a title or lease."

Petco, in characterizing the interests it offers and sells to the general public, asserts in its brief that all elements of the interests offered and the entire package as a whole comes within the exclusionary language quoted above. In its description of the interests involved, Petco states:

"It is the assignment of a fractional interest in an oil and gas lease—a 'certificate of interest' in such a lease—with an agreement governing the development of the fractional interest so assigned—a 'certificate of participation' in such lease. Neither the leasehold assignment, nor the accompanying development agreement, nor the two considered together, are outside the statutory exclusion."

The position of the Oklahoma Securities Commission is that had the appellant been marketing only bare leasehold interests without combining them with operating agreements, the interests sold would clearly be excluded under the provisions quoted above. However, the Commission asserts that the operating agreement coupled with the lease interests constitutes an entire package which is not included within the exclusion.

The interests sold by Petco are undivided ¹⁄₁₂₆th interests in a particular lease. In addition to the purchase price, each ¹⁄₁₂₆th interest is charged a fixed proportionate share of the drilling costs, $980.00, and if completion is warranted, is charged an additional $980.00 for completion costs.

The operating agreement which accompanied each lease provided that the operator had unrestricted control of locating, drilling, reworking, testing, completing, equipping, operating, and abandoning each well or each leasehold property.

as an ongoing business. The exemption also excludes the execution of an oil and gas lease by the land mineral and royalty owners in favor

The agreement further provided that the operator had authority to contract with other companies for drilling, maintenance and operation of any lease. The agreement also provided that the operator was entitled to charge $252.00 per month to pay for his overhead expenses, that the leaseholders were to bear their proportionate share of the expenses of operation. Additionally, the offering sheet, (the receipt of which was acknowledged by each leaseholder in the operating agreement), informed the investors that they were subject to further liability in the event an unexpected accident occurs, but stated that the company had sufficient insurance to minimize this exposure.

I

The first issue raised is: Does the inclusion of a nonsecurity in an investment package preclude the investment package as a whole from constituting a security? We hold that it does not. Our holding is based upon the "flexible" definition of a security adopted by the Oklahoma Legislature in 1973 and upon case law from other jurisdictions.

In 1973, long before Petco started operations in the State, this State's Legislature codified a definition of a security at 71 O.S.Supp. 1973 § 2(20)(P). The definition provides that a security means any:

"investment of money or money's worth including goods furnished and/or services performed in the risk capital of a venture with the expectation of some benefit to the investor where the investor has no direct control over the investment or policy decision of the venture; . . ."

This definition of a security is, with some modifications, a codification of the definition of an investment contract used by United States Supreme Court in *SEC v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), which provided that an investment contract means:

of parties engaged in the business of exploring for or producing oil and gas or other valuable minerals.

" * * * a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." 328 U.S. 293 at 298, 66 S.Ct. 1100 at 1103, 90 L.Ed. 1244.

Mr. Justice Murphy, speaking for the Supreme Court in the *Howey* case, commented upon the purpose and use of the above quoted definition:

"It permits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in our commercial world fall within the ordinary concept of a security.' H.Rep. No. 85, 73d Cong. 1st Sess. p. 11. It embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits." 328 U.S. 293 at 299, 66 S.Ct. 1100 at 1103, 90 L.Ed. 1244.

Through the use of a "flexible" definition of an investment contract, courts through the years have held that a combination of real or personal nonsecurity property, coupled with a management contract that deprives investors of control over their investment, becomes an investment contract and thus, falls within the definition of a security. Such cases have held that the offering and selling of cattle, beavers, oil pumps and condominium apartment units fall within the definition of an investment contract when coupled with a management contract. See e. g., *People v. Witzerman*, 29 Cal. App.3d 169, 105 Cal.Rptr. 284 (Dist.Ct.App. 1972) (cattle); *Continental Marketing Corp. v. SEC*, 387 F.2d 466 (10th Cir. 1967) (beavers); *Rice v. Bogart*, 272 Ill.App. 292 (1933) (oil pumps); *Lowery v. Ford Hill Investment Co.*, Colo.App., 548 P.2d 127 (1976) (condominium apartment units).

The rationale used in the above cited cases, like the definition of security codified in 1973 by the Oklahoma Legislature, emphasizes the economic realities of a transaction, not its form. Such a rationale dictates that the investment package as a whole is to be considered in determining whether a transaction constitutes a security.

Finding that it was the intent of the Legislature to provide a flexible definition of a security, we hold that the inclusion of a nonsecurity in an investment package does not preclude the investment package as a whole from constituting a security.

## II

■ In examining the investment package sold by Petco, we find that it constitutes a security under the definition of a security at 71 O.S.Supp. 1973 § 2(20)(P), quoted above.

The package sold by Petco requires the investment of money.

The package sold by Petco takes investor's money and subjects it to the risk of the venture, thus constituting risk capital.

The package sold by Petco offers to the investors an expectation of a benefit, in this instance a profit.

The package sold by Petco provided that the investors would have no direct control over the investment or policy decision of the venture. It is clear from the operation agreement, that any profit or benefit to be derived from a leaseholder's investment is to be the product of the actions and decisions of the operator and that the investors do not participate in the decisions and actions involved.

Thus, the package being offered and sold by Petco, although it contains an exempt lease interest, clearly constitutes a security under the definition of a security at 71 O.S.Supp. 1973 § 2(20)(P).

## III

Having found that the package being sold by Petco constituted a security, we will now determine whether the package *as a whole* was exempted from the purview of

the Oklahoma Securities Act by 71 O.S.§ 2(*1*) (Laws 1961 p. 580), which provided that a security did not include:

"* * * any oil, gas, or mining title or lease or any certificates of interest or participation, or conveyance in any form, of an interest therein, or in payments out of production under such a title or lease."

The above quoted exemption excluded the following interests from the definition of "security":

1. Oil, gas or mining titles or leases.
2. Certificates of interest or participation of an interest in an oil, gas or mining title or lease, or in payments out of production under such a title or lease.
3. Conveyance in any form of an oil, gas, or mining title or lease or of an interest in payments out of production under such a title or lease.

In determining whether the interests sold by Petco fall within the exclusionary language, we first note that although the interests sold by Petco involve interests in oil and gas leases, the transaction was primarily an investment transaction.

We do not agree with Petco's argument that the exclusionary language exempts all transactions dealing with interests in or conveyances of interest in oil, gas or mining titles or leases. The Legislature in drafting the exclusion specifically enumerated interests and transactions to be excluded. This specific enumeration suggests that a broad interpretation of the exclusionary language is inappropriate.

■ We also note, as discussed above, the investment package sold by Petco contained more than interests in oil and gas or mineral titles or leases. Although the exemption clearly excludes interests in oil and gas leases or titles, we do not believe it was the intent of the Legislature to exclude investment transactions merely because interest in oil or gas titles or leases are involved.

Consequently, we hold that the exclusionary language was meant to exclude bare interests in oil and gas or mineral titles or leases, but was not meant to exclude investment transactions merely because the transactions involved such interests.

■ In urging this Court to adopt a broad interpretation of the exclusionary language, appellant Petco argues that the phrase "in any form," which follows "conveyance," not only modifies conveyance but also modifies "certificates of interest or participation," concluding that any certificate of interest or participation, no matter what its form, is excluded. The grammatical structure of the sentence, with a comma following participation, as a matter of grammatical construction precludes such an interpretation. We also note that the origin of the exclusionary language precludes a broad interpretation of the word "participation," as the Official Comment to the Uniform Securities Act, from which the language was taken, clearly indicates that "participation" had a specific meaning.[2] Based upon the structure, language and wording of the exclusion, we hold that the exclusion does not exempt the investment transaction package sold by appellant Petco.

In support of its argument that the investment packages sold were exempt from the Oklahoma Securities Act, Petco cites *Gaillard v. Field*, 381 F.2d 25 (10th Cir. 1967), in which, under facts similar to those before us, the United States Court of Appeals upheld a trial court's holding that such interests in oil and gas did not constitute a security, or such interests were excluded under the Oklahoma Statute. The decision in *Gaillard* was made prior to the Legislature's adoption of 71 O.S.Supp. 1973 § 2(20)(P), and was not based upon as a complete examination of the Legislative history as we have before us. For these reasons, we do not find the *Gaillard* case persuasive.

---

**2.** The Official Comments to the Uniform Commercial Securities Act indicate that the word "participation" was included to indicate that oil payments were to be securities whether or not they were regarded as interests in titles or leases. [Official Comment to Section 401(*1*) reprinted in Loss and E. Cowett Blue Sky Law 350 (1958)].

Petco argued that even if the interest they sell is construed to be security not excluded under the Oklahoma Statute, that the Commission's treatment of that interest as a security was in violation of the Oklahoma Administrative Procedures Act, for a long standing rule or policy of the Commission treated such interests as nonsecurities, and such rule could not be changed unless the proper administrative procedures were followed.

Because this issue was not raised until more than six months after the decision being appealed, and because we find no indication in the record that such a formal rule or policy existed, we deem it unnecessary to further consider this issue.

Having found that the investment packages sold by appellant Petco constitute securities under the Oklahoma Securities Act, which are not exempt from the Act, we hold that the trial court's action was proper. We therefore affirm the action of the trial court in case No. 49,054 and we assume original jurisdiction in Case No. 49,806 and deny appellant's application for a writ of prohibition.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, BARNES, SIMMS, and DOOLIN, JJ., concur.

IRWIN and BERRY, JJ., dissent.