In re JOHNSTON ENERGY, INC., EIN 73–1231640, Debtor.

Bankruptcy No. 88–00284.

United States Bankruptcy Court, E.D. Oklahoma.

July 28, 1988.

Donald Shandy, Okmulgee, Okl., for Hardy, et al.

Randy Bauman, Oklahoma City, Okl., for Dayle James.

Mitchell Shamas, Okmulgee, Okl., for First National.

Robert Inglish, Okmulgee, Okl., and Katherine Vance, for the U.S. trustee.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On July 21, 1988, this Court conducted a hearing in the above matter regarding a Motion to Borrow Funds by Johnston Energy, Inc. (DIP) with accompanying Objections filed by creditors Hardy, Bauman, Michaud, Hudson and Abroms (Hardy, et al.) and by creditor Dayle James. Also coming on for consideration was a Motion to Dismiss by creditors Hardy, et al. with Objection made by the DIP.

Appearances were made on behalf of the DIP by Mr. Donald Shandy, for Hardy, et al. by Mr. Randy Bauman, for Dayle James by Mr. Mitchell Shamas, for First National Bank and Trust Company of Okmulgee, Oklahoma (First National) by Mr. Robert Inglish and Ms. Katherine Vance representing the United States Trustee.

Evidence was introduced and taken simultaneously for these Motions and will be considered jointly in this Order.

After review of the testimony, evidence presented and the file in this case, we FIND:

### FINDINGS OF FACT

1. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b). This Order is issued in compliance with B.R. 9021.

2. The DIP filed for Chapter 11 relief under the U.S. Bankruptcy Code on March 18, 1988.

3. The DIP controls, operates and retains a Working Interest in five (5) oil and gas wells located in the Okfuskee County area (i.e., Henke # 2–16, Lamar # 1, Lamar # 1A, Lamar # 2A and the Johnston # 3–16). The Johnston # 3–16 is presently a nonproducing well while the remaining four wells are engaged in minimal production at this time.

Johnston Energy retains a Working Interest in the above wells as follows:

(a) Henke    # 2–16  —  .43282500
(b) Lamar    # 1     —  .38829375
(c) Lamar    # 1A    —  .40130000
(d) Lamar    # 2A    —  .40130000

686

4. These wells were at one time yielding considerable production but as flowing well pressures diminished, a rework operation became necessary and was performed in February, 1987. This action briefly increased production but through the mismanagement of the DIP, resulting in a decreased output, the DIP was forced to seek additional cash injection to continue operations. In November, 1987, the DIP obtained a loan through First National in the amount of $25,043. In exchange, for the purpose of securing this loan, First National obtained an Oil and Gas Mortgage on the DIP's Working Interest in the four wells. The amount of the Working Interest mortgaged is:

(a) Henke #2–16 — .4015750
(b) Lamar #1, #1A, #2A— .3750000 each

5. Once again the DIP finds itself sorely lacking in operating capital and reduced production due to maintenance problems associated with these wells. And once again the DIP seeks a loan from First National in the amount of $17,849 to cover its interest to rework the wells with the hope that production will increase. First National, in consideration for its loan, would receive a "super priority" lien on the proceeds of production, holding a six month Note at 12.5% interest. The DIP proposes that the rework be supervised and conducted by Mr. James Wise, a geologist with some experience in production—this mostly to allay the fears of creditors and other Working Interest owners about the questionable financial practices to date of the DIP as outlined below.

The rework operation would include the immediate use of approximately $7,600 for intangible costs designed to stimulate production. The remaining $10,254 would be attributed to tangible equipment costs to be purchased from Mr. Wise on a 60–90 day trial basis, with the Working Interest holders in toto deciding whether the costs are justifiable for the return.

Mr. Wise has obtained payment from the majority of the Working Interest holders for the rework operation. He remains in possession of the uncashed checks.

6. The DIP also holds an unencumbered Oil and Gas Lease in Okfuskee County known as the Mandy Lease which expires August 19, 1988. This property is as yet an undrilled prospect. However, the DIP has offered participation in the Mandy Lease post-Petition without Court approval. To date, interests in the Mandy Lease have been sold to the extent of $^{11}/_{16}$ Working Interests, with the DIP retaining a 25% Working Interest. The money paid in consideration for these interests remains in the form of unnegotiated checks and in the possession of the DIP's attorney. The moneys derived from an interest sold pre-Petition to Hamilton do not remain at the DIP's disposal.

7. The DIP's mismanagement of operations did not end with the filing of the Bankruptcy Petition on March 18, 1988. Rather, the transgressions continued in that:

(a) Debtor for the first time began to draw a salary from the estate post-Petition in the amount of $1,000 per month *without* Court approval;

(b) Debtor received reimbursements for personal expenses in the amount of approximately $3,000 since March *without* prior Court approval;

(c) Debtor offered participation in the Mandy Lease, an asset of the estate, post-Petition *without* registering said security or having obtained an exemption from the Oklahoma Securities Commission, as required by law.

(d) Debtor offered no evidence of having in effect authority from the Oklahoma Corporation Commission to drill the Mandy Lease. It is doubtful Debtor has such authority due to the Commission's financial requirements for issuing a Drilling Permit.

CONCLUSIONS OF LAW

A. The DIP requests permission to borrow funds pursuant to 11 U.S.C. § 364. However, to grant such a request requires that this Court look to the potential benefit to the estate and the unsecured creditors. It becomes increasingly obvious that the DIP will continue some modicum of control

over the operations and thus any funds borrowed. In considering the egregious past conduct of the DIP pre- and post-Petition, the prospect of the DIP remaining even remotely in control is unacceptable. Thus, providing additional funds at the DIP's disposal seems equally unacceptable.

■ B. The worst example of the DIP's misconduct deserves this Court's immediate scrutiny and consideration. The Mandy Lease represents a perishable asset of the estate, with its expiration date of August 19, 1988 rapidly descending upon us. An interest in an oil and gas lease is indeed a "security" as defined by Okla.Stat.Ann. tit. 71, § 2(20)(R) (West Supp.1988), the Oklahoma Securities Act. The offering and sale of fractional interests in the lease require either registration of the security with the Oklahoma Securities Commission or the claiming of an exemption under the Oklahoma Securities Act. *Day v. Petco,* 558 P.2d 1163 (Okla.1977). Even if the DIP claims an exemption, the burden is on it to prove the exemption and make the claiming of such known to the Oklahoma Securities Commission. *Musson v. Rice,* 739 P.2d 1004 (Okla.1987).

The illegality of these actions and the necessity for this Court to act without delay in order to preserve an asset of the estate give rise to this Court's decision today.

■ C. The options available to best serve this estate are limited. The appointment of a Chapter 11 Trustee to manage the operations of this estate is not a viable solution. The business of this estate is highly specialized and hypertechnical; thus, this Court finds no candidate on the Trustee's Panel with the necessary skills and knowledge to satisfactorily perform the functions to continue this operation.

If this Court were to grant Hardy, et al.'s dismissal motion, there is little doubt that chaos would reign supreme as the various unsecured interests fought in State Court over control and satisfaction. This Court chooses not to subject the DIP and the creditors to such a fate.

D. The most viable alternative that this Court has available is the immediate conversion of this case to Chapter 7 and the appointment of a Trustee by the U.S. Trustee's office to liquidate this estate.

Conversion from Chapter 11 to Chapter 7 is governed by 11 U.S.C. § 1112(b) which states in part:

> "... On request of a party in interest or the United States Trustee, and after notice and a hearing, the Court may convert a case under this Chapter to a case under Chapter 7 of this title or may dismiss a case under the Chapter, whichever is in the best interest of creditors and the estate *for cause,* including—
>
> > (1) continuing loss to or dimunition of the estate and absence of a reasonable likelihood of rehabilitation."

(Emphasis added)

The ability of this Court to convert this case sua sponte to Chapter 7 is well documented and supported. In this case, an immediate and damaging loss to the estate is threatened and conversion is justified by such circumstances. *Matter of Nikron, Inc.,* 27 B.R. 773 (Bankr.E.D.Mich.1983). Further, the allegations of wrongdoing by the DIP support this Court's position that conversion is justified. *In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir. 1986). *Matter of Gusam Restaurant Corp.,* 32 B.R. 832, 10 Bankr.Ct.Dec. (CRR) 1320 (Bankr.E.D.N.Y.1983). Finally, the protection sought by the Code of a hearing to determine factual issues has been satisfied as to a Motion to Dismiss and thus the same evidence was utilized to determine the viability of conversion.

E. With the conversion of this case and removal of the DIP, the appointed Trustee must *immediately* dispose of the Mandy Lease which expires August 19, 1988, no later than August 12, 1988, at *public sale* in accordance with the provisions of 11 U.S.C. § 363 for the highest and best offer.

Also, the checks which have been tendered to Don Shandy, attorney for the DIP, in payment for Working Interests in the Mandy Lease shall be returned to their respective issuers. The checks tendered to Mr. James Wise as payment by the Work-

ing Interest holders for the proportionate share of the rework are not within the jurisdiction of this Court. However, we wish it to be made abundantly clear that Mr. Wise in no way has the authority of this Court to act for this estate.

IT IS THEREFORE THE ORDER OF THIS COURT that the DIP's Motion to Borrow Funds and creditor Hardy et al.'s Motion to Dismiss are denied.

Further, this case is converted to Chapter 7 for liquidation under the terms set forth within this Order with the United States Trustee directed to immediately appoint a Trustee to perform said terms with expediency.